UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   18-61084-CV-WILLIAMS
MAGISTRATE JUDGE REID

NORRIS CLEMONS,

     Petitioner,

v.

MARK S. INCH,

     Respondent.

_____/

## **REPORT OF MAGISTRATE JUDGE**

### **I. Introduction**

This Cause is before the Court upon Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which challenges the constitutionality of his conviction and sentence for burglary of an occupied dwelling, following a jury trial in case no. 12-42CF10A in the state circuit court in and for Broward County, Florida. [ECF No. 1]. For the reasons detailed below, the Petition should be denied.

This Cause has been referred to the Undersigned for consideration and report, pursuant to S.D. Fla. Admin. Order 2019-02 and all applicable Rules Governing Habeas Corpus Petitions in the United States District Courts. [ECF No. 25].

## II. Claims

Construing the arguments liberally, as afforded to *pro se* litigants pursuant to

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raised the following

claims:

> 1. The trial court erred by failing to make an adequate *Nelson* inquiry and failed to inform Petitioner of his right to proceed self-represented;
>
> 2. The trial court erred by overruling Petitioner's objections to exclude evidence of the victim's attempt to file a restraining order against Petitioner;
>
> 3. The trial court erred by denying Petitioner's motion for judgment of acquittal;
>
> 4. The prosecution violated due process by arguing two separate factual theories of burglary before the jury when Petitioner was charged under one theory;
>
> 5. The trial court violated the Sixth and Fourteenth Amendments by designating Petitioner as a Prison Release Reoffender (PRR) and as a Habitual Felony Offender (HFO);
>
> 6. Trial Counsel was ineffective for failing to call a witness to testify at trial.

[ECF No. 1].

## III. Factual Background

Ms. Rachel Bell, the victim, testified at trial. [ECF No. 17-1, at 279]. On the

night of December 31, 2011, she stayed at home. [*Id.* at 281-82]. At 5:00 p.m., on

December 31, 2011, she received a call from Petitioner who invited her out. [*Id.* at 283]. She declined. [*Id.*].

Previously, Petitioner and Ms. Bell were in an "on and off" relationship. [*Id.* at 283]. Their relationship began about one year before the relevant events and ended six months before the relevant events. [*Id.* at 283-84]. When the two separated, Petitioner's property was removed from Ms. Bell's residence. [*Id.* at 284-85]. He never had a key of his own. [*Id.* at 285]. After the breakup, Petitioner was invited to the home, but he never stayed or resided with Ms. Bell. [*Id.*]. None of Petitioner's personal property ever remained at Ms. Bell's residence after these visits. [*Id.* at 285-86]. He did not pay rent, and his name was not on the lease. [*Id.*].

With that context in mind, on the night of the incident, Ms. Bell testified that Petitioner arrived at her residence with a Styrofoam cup filled with liquor. [*Id.* at 286]. Ms. Bell exited her residence to try and calm down Petitioner while he made derogatory slurs and degrading comments. [*Id.* at 287]. Ms. Bell walked away and returned inside her home. [*Id.* at 287].

Based on his conduct, Ms. Bell asked Petitioner to leave, and so he did. [*Id.* at 288]. Although Petitioner left, he returned one hour later. [*Id.*]. Ms. Bell interacted with Petitioner again, trying to keep Petitioner calm; however, he repeated his conduct of making derogatory and degrading remarks. [*Id.* at 289]. Ms. Bell walked away and asked Petitioner to leave. [*Id.*]. At that point, Ms. Bell's aunt called the

police and notified Ms. Bell that the police were coming. [*Id.* at 289-90]. Ms. Bell told Petitioner that the police were coming. [*Id.*]. Once an officer arrived at the scene, Petitioner was taken in handcuffs. [*Id.* at 291-92]. Petitioner's aunt appears to have left after Petitioner's arrest. [*Id.* at 295].

After midnight, Ms. Bell saw Petitioner in the street. [*Id.* at 292]. Petitioner again made derogatory remarks. [*Id.*]. Ms. Bell returned inside her home and locked her door—afraid of Petitioner attempting to come inside. [*Id.* at 293]. Petitioner began knocking on the door and windows while asking Ms. Bell to come outside and talk. [*Id.*]. After not receiving a response from Ms. Bell, Petitioner stated: "bitch, if I catch you on the streets, you mine (sic). And you better watch your back. You never know when I'm coming." [*Id.* at 293-94]. At some point during the evening, Petitioner threatened to blow up Ms. Bell's house. [*Id.* at 313].

At around 2:00 a.m., Ms. Bell's father and aunt returned from a late-night church service. [*Id.* at 295]. Petitioner spoke to Ms. Bell's father and then again left the premises. [*Id.*]. Three hours later, Petitioner came back. [*Id.*]. Petitioner broke the window to Ms. Bell's bedroom and reportedly said "[b]itch, [I] told you I would be back." [*Id.* at 295-97]. Ms. Bell saw that Petitioner ran a hose through the window in order to run water into her bedroom. [*Id.* at 298].

Police arrived at about that time, and Petitioner was seen with his hand and arm bleeding. [*Id.* at 299-300]. Ms. Bell saw that Petitioner broke the window and

the screen of her home. [*Id.* at 300]. Ms. Bell further testified that she previously attempted to obtain a restraining order against Petitioner in the past. [*Id.* at 301]. Later during her testimony, Ms. Bell stated that there was a small, pin-sized crack in the window and clarified that it was not possible for a hand or hose to fit through that crack. [*Id.* at 362].

Deputy Latonya Phillips arrived at the scene. [*Id.* at 374-379]. She confirmed, at trial, that Petitioner was inebriated, did not possess a key to the residence, and had no personal property inside. [*Id.* at 381-82].

## IV. Procedural History

Petitioner was on probation. [ECF 16-1, at 1-33]. After violating his probation in 2011, Petitioner's probation was reinstated and extended. [Id. at 35-57]. In 2012, Petitioner was charged with the pertinent criminal charge, burglary of a dwelling in Case No. 12-42CF10A, and an affidavit was entered alleging Petitioner had violated the terms of his probation. [*Id.* at 59-66].

Following a jury trial, Petitioner was found guilty. [*Id.* at 68]. The trial court additionally the trial court revoked Petitioner's probation. With respect to the burglary conviction, the trial court sentenced Petitioner to 20 years' imprisonment to be followed by ten years' probation as a prison release reoffender (PRR) and as a habitual felony offender (HFO). [*Id.* at 80-83]. With respect to the violation of probation, the trial court appears to have entered a document that purported to

sentence Petitioner to five years' imprisonment which indicates Petitioner willfully violated his probation. *Clemons v. State*, 171 So.3d 181 (Fla. 4th DCA 2015) (referring to [ECF 16-1, at 95-97]).

Petitioner appealed and also filed a motion to correct sentencing errors in the trial court. [ECF No. 16-1, at 90-133]. On July 29, 2015, the Fourth District Court of Appeal *per curiam* affirmed the conviction and sentence for the burglary charge and the trial court's revocation of probation; however, it also remanded with instructions for the trial court to enter an order stating Petitioner had violated his probation, as the trial court only entered a "disposition slip" indicating a willful violation occurred. [ECF No. 16-1, at 194-95]; *see also Clemons*, 171 So.3d at 181. Petitioner filed a motion for rehearing which was denied. [ECF No. 16-1 at 199-205, 207]. Petitioner did not pursue further review.

Petitioner filed a Motion for Reduction or Modification of Sentence pursuant to Rule 3.800(c). [ECF No. 16-1, at 211-13]. The motion was denied in the trial court [*Id.* at 215] and dismissed by the Fourth District Court of Appeal as non-appealable. [*Id.* at 221].

Petitioner subsequently filed a Rule 3.850 Motion for Postconviction Relief with Memorandum of Law in Support. [*Id.* at 223-34, 238-56]. The trial court denied relief by incorporating the reasoning contained in the state's response. [ECF 16-2, at 81]. Although Petitioner appealed, the Fourth District Court of Appeal *per curiam*

affirmed without written opinion. [*Id.* at 88]. The mandate was entered on March 23, 2018. [*Id.* at 90].

## V. Timeliness

Stated broadly, an application for a writ of habeas corpus under 28 U.S.C. § 2254 must be filed before a 1-year limitations period expires, and this limitation period usually runs from the date the challenged judgment became "final." 28 U.S.C. § 2244(d). In this case, the parties do not dispute the timeliness of the Petition. *See* [ECF No. 15, at 12].

## VI. Exhaustion

Pursuant to 28 U.S.C. 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119-20 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). In this case, Respondent argues Grounds Two, Three, and Five were not properly exhausted.

### i. Grounds Two and Three were not Properly Preserved and are Unexhausted

On direct appeal, Petitioner raised what are listed in this action as Grounds Two and Three. [ECF No. 16-1, at 103, 117-24]. Respondent contends these two

claims were not properly exhausted for federal habeas review because Petitioner did not present the claim in federal constitutional terms. [ECF No. 15, at 13-16].

Prisoners must fairly present their federal claims in each appropriate state court in order to alert the state courts to the federal nature of a claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). To make a fair presentation to the state courts, the relevant filings must either explicitly refer to a federal claim or cite to a federal source that would have alerted the reviewing state court of the federal nature of the claim. *Id.* at 33. Prisoners could also fairly present their claims by simply labeling their claim as "federal." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012). However, habeas applicants must "do more than scatter some makeshift needles in the haystack of the state court record" to properly exhaust their claim. *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (quoting *Kelley v. Sec'y, Fla. Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004)) (internal quotation marks omitted)

Here, a review of the initial brief on direct appeal confirms that Petitioner did not cite or reference federal law in discussing Grounds Two and Three. [ECF No. 16-1, at 117-24]. Although Petitioner avers that he has made a fair presentment of the federal nature of his claims because the state law basis is "identical" to the federal basis [ECF No. 23, at 4], this is not enough. Therefore, because Petitioner did not

8

comply with the fair presentation requirement to properly exhaust, Grounds Two and Three are unexhausted and procedurally defaulted.

### ii. Ground Five appears Properly Exhausted

In Ground Five, Petitioner contends the trial court erred in sentencing him as a prison release reoffender and as a habitual felony offender because the predicate findings were not made by the jury in violation of *Alleyne v. United States*, 570 U.S. 99 (2013). This claim was raised on direct appeal. [ECF No. 16-1, at 128-31]. While on direct appeal, the State argued that this particular claim was not properly preserved for appellate review by the filing of a Rule 3.800 motion. [*Id.* at 160-61]. In the alternative, it argued the merits. [*Id.* at 160-71].

Respondent submits that the Fourth District Court of Appeal presumptively resolved this claim based on the procedural issue, not the merits. [ECF No. 15, at 20]. However, in Petitioner's reply brief within that proceeding, it cites *State v. Fleming*, 61 So. 3d 399 (Fla. 2011). [ECF No. 16-1, at 191]. In *Fleming*, the Florida Supreme Court noted that Rule 3.800 motions could preserve *Apprendi*[1] issues for direct review. *Fleming*, 61 So. 3d at 401 n.3. As will be indicated *Alleyne* is related to *Apprendi*, meaning the Fourth District Court of Appeal most likely reached the merits. Thus, contrary to Respondent's arguments, it appears this claim was properly exhausted for federal habeas review.

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

### iii. Cause and Prejudice

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." *Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006).

Where there was "something external" that cannot "fairly be attributed" to the litigant's conduct, which impeded a litigant's efforts to comply with the procedural rule, cause exists. *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (relying upon *Coleman*, 501 U.S. at 753). "To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Alabama Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (quoting *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)) (internal quotations omitted). Petitioner provides no reason to explain his failure to properly exhaust Claims two and three on direct appeal. As such, by Petitioner not identifying "something external" to the defense that caused the procedural default of Grounds Two and Three, he has failed to show cause. The Court need not address prejudice.

### iv. Fundamental Miscarriage of Justice and Actual Innocence

"If a petitioner cannot show cause, he may still survive a procedural bar by proving that the failure to hear the merits of his claim would endorse a fundamental miscarriage of justice." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)

(relying upon *Murray*, 477 U.S. at 495). Under this miscarriage-of-justice exception, "actual innocence, if proved, serves as a gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (relying upon *House v. Bell*, 547 U.S. 518 (2006) and *Schlup v. Delo*, 513 U.S. 298 (1995)).

To qualify under this exception, petitioners must show that, in light of the new evidence, no reasonable juror would have voted to find petitioner guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally barred claim through this exception. *Schlup*, 513 U.S. at 316.

Petitioner does not rely upon any fresh evidence of his innocence. Therefore, even if Grounds Two and Three had any merit, this equitable exception does not apply. In sum, without an applicable equitable exception, Grounds Two and Three are procedurally barred from federal habeas review.

## VII. Standard of Review

In considering Petitioner's remaining claims, several limits exist on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The most restrictive limit is that found in § 2254(d). As amended by the AEDPA, pursuant to § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal brackets omitted). A state court's decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Consalvo*, 664 F.3d at 844 (quoting *Williams*, 529 U.S. at 413). Importantly, AEDPA's deferential standard under § 2254(d) applies only whenever state court proceedings adjudicated a claim on the merits. *See Cullen*, 563 U.S. at 181.

To qualify as an adjudication on the merits, very little is required. In fact, federal courts should presume that § 2254(d)'s deference applies. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Even where there was a summary denial and no reasons for the denial of relief were articulated by the state trial court, such a ruling is also presumed to be an adjudication on the merits. *Id.* at 100; *see also Gill v. Mecusker*, 633 F. 3d 1272, 1288-89 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference).

"The presumption [in favor of a merits ruling existing] may be overcome" only "when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99-100 (relying upon *Ylst v. Nunnemarker*, 501 U.S. 797, 803 (1991).

Recently, in *Wilson v. Sellers*, 138 S. Ct. 1188, 1192-94 (2018), the Supreme Court held there is a "look through" presumption in federal habeas corpus law, as silence implies consent. This means federal courts should rely upon the "last related state-court decision" that provides a relevant rationale when the highest state court's adjudication on the merits of a claim is unaccompanied by an explanation. *See id.* at

13

1192. Put into practice, *Wilson* clarifies the reasoning that is presumptively afforded § 2254(d)'s deference.

But if the highest state court provides an "unexplained decision on the merits," and there is no lower court decision to "look through," federal courts may turn to the "could have supported" standard set forth in *Richter* when there are "convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court[.] *See Wilson*, 138 S. Ct. at 1195-97 (explaining *Richter* controls when there is no reasoned decision and the decision of a lower court cannot be looked to as the reasoning of the highest state court). Under that framework, this Court must determine whether there are any arguments or theories that "*could have supporte[d]* the state court's decision" and "ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision[.]" *Richter*, 562 U.S. at 102 (emphasis added).

## VIII. Discussion

A. <u>Ground One</u>

Liberally construed, as Ground One, Petitioner argued that he was deprived of a fair trial when the trial court failed to make an adequate *Nelson* inquiry and failed to inform him of his right to represent himself. [ECF No. 1, at 3-5].

In *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973), Florida's Fourth District Court of Appeal held trial courts may inquire of indigent defendants whether they wish to discharge their court-appointed trial attorneys who operate incompetently during trial proceedings. *Glover v. State*, 226 So. 3d 795, 807 (Fla. 2017) (discussing *Nelson* hearings); *see also Hardwick v. State*, 521 So. 2d 1071, 1074-75 (Fla. 1988) (approving and adopting *Nelson* hearings). Defendants must articulate a specific complaint before a *Nelson* hearing is required, as generalized complaints will not do. *Guardado v. State*, 965 So. 2d 108, 113 (Fla. 2007).

In contrast to *Nelson*, which evaluates whether court-appointed counsel is competently representing their client during criminal proceedings in Florida's state courts, the Supreme Court's decision in *Faretta* concerns a defendant's right to self-representation. *See Faretta v. California*, 422 U.S. 806, 818, 832-33 (1975).

In *Faretta*, the Supreme Court recognized that the Constitution contains a right to self-representation for criminal defendants seeking to proceed to trial without an attorney. *See Faretta*, 422 U.S. at 818, 832-33. Of course, in order to represent oneself, a defendant must knowingly and intelligently waive the benefits typically associated with the right to counsel. *Id.* at 835.

While defendants do not need the skill and experience of a lawyer in order to competently and intelligently choose self-representation, defendants "should be made aware of the dangers and disadvantages of self-representation, so that the

record will establish that 'he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835.  To invoke one's right of self-representation, the invocation must be "clearly and unequivocally, understandable to the trial court by the reasonable person standard." *See Stano v. Dugger*, 921 F.2d 1125, 1144 (11th Cir. 1991).

As an initial matter, a claim challenging a state court's application of *Nelson* is an issue of state law and provides no basis for federal habeas relief. *See, e.g.*, *Mosley v. Crosby*, No. 5:04-CV-233-SPM, 2006 WL 5201354, at *6 (N.D. Fla. Mar. 12, 2006); *Daniels v. Sec'y, Fla. Dep't of Corr.,* No. 3:09-CV-1161-J-37MCR, 2012 WL 955001, at *5 (M.D. Fla. Mar. 21, 2012). Because it is well settled that federal habeas relief is available only to correct federal constitutional injuries, *see* 28 U.S.C. § 2254(a), this claim is not cognizable.

To the extent Petitioner argues the trial court failed to advise Petitioner of the right to represent himself pursuant to *Faretta*, *see* [ECF No. 1, at 5], this claim lacks merit even under *de novo* review. Petitioner's statements in the trial court reflect his sole interest in having a different attorney appointed due to general dissatisfaction with counsel. To illustrate, during the *Nelson* hearing, Petitioner unequivocally stated as follows:

> *All I'm asking is for one favor*. You've been letting this stuff… And I can have you state, if I can get *one favor*, just *one favor, just assign one person to me*. I've been speaking to her on the phone. She waiting (sic) on you to

> *assign the case to her*, if you don't mind, please. Transfer
> to the one person.

[ECF No. 19-1, at 6] (emphasis added). As Petitioner's requested favor for a different attorney does not evidence a clear invocation to proceed self-represented, the trial court was under no constitutional obligation to perform a *Faretta* inquiry. *See Stano*, 921 F.2d at 1144. Accordingly, as this claim can be denied even under *de novo* review, Petitioner certainly cannot meet his burden under § 2254(d).

B. Ground Four

In Ground Four, Petitioner argued that the prosecution erred by arguing two separate factual theories of burglary when Petitioner was charged only under one theory. [ECF No. 1, at 10-11]. To support this claim, Petitioner asserts that the prosecution should not have argued that Petitioner's hand moving through a window constitutes a burglary if it was also going to argue that being on the curtilage sufficed. [*Id.* at 10-11].

In truth, Petitioner was charged under and given notice of both theories. [ECF No. 16-1, at 65] (showing charge of unlawfully entering "a dwelling or the curtilage thereof"). As Petitioner's assertions are refuted by the record, this claim lacks a factual predicate. Additionally, Petitioner failed to direct the Court to clearly established federal law that prohibits prosecutors from arguing alternative theories of guilt when the defendant was given notice of both theories in the charging

document. Consequently, as this claim lacks any merit, Petitioner cannot meet his burden under § 2254(d). Thus, this claim should be denied.

## C. Ground Five

In Ground Five, as previously mentioned, Petitioner contends his sentence was imposed in violation of *Alleyne v. United States*, 570 U.S. 99 (2013). [ECF No. 1, at 12-13]. In support, Petitioner asserts that the instant offense occurring within five years from his previous release from prison was not submitted to the jury purportedly rendering his PRR and HFO designations unconstitutionally reached. [*Id.*]. As this claim was denied in the Fourth District Court of Appeal, it was presumptively adjudicated on the merits and is subject to § 2254(d). Additionally, the Fourth District Court of Appeal's unauthored affirmance presumptively relied upon any arguments raised before it.

On direct appeal, the State argued that Petitioner's HFO and PRR designations were constitutional because *Alleyne* explicitly left the holding in *Almendarez-Torres*[2] intact, which holds a prior conviction is not a fact that must be alleged in the indictment or found by a jury beyond a reasonable doubt. [ECF No. 16-1, at 164-67]. Consequently, prior conviction sentencing enhancements, as the State argued, need not be found by a jury or alleged in the indictment. [*Id.*].

---

[2] *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

This analysis of federal law is correct. *See Alleyne*, 570 U.S. at 111 n.1 (affirming the validity of *Almendarez-Torres*, which held the fact of a prior conviction need not be submitted to the jury); *see also Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2001) (recognizing recidivism as a traditional basis for a sentencing court's increase in an offender's sentence). This Court reminds bound by *Almendarez-Torres*. Thus, as Petitioner is unable to identify clearly established federal law that shows such an analysis violated § 2254(d), this claim should be denied.

D. Ground Six

In Ground Six, Petitioner claims his counsel was ineffective for not calling Detective Rodriguez, the lead investigator, as a defense witness at trial. [ECF No. 1, at 14-15]. According to Petitioner, Detective Rodriguez would have testified that the victim gave Petitioner permission to be on the property. [*Id.* at 14].

The Sixth Amendment affords a criminal defendant the right to the assistance of counsel for his defense. U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a

reasonable probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or appellate counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that trial counsel took during the proceedings. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the prejudice prong, it is met if, but for counsel's deficient performance, the outcome of the proceeding would have been favorable. *Strickland*, 466 U.S. at 694. And yet, the error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687.

Respondent argues that Detective Rodriguez's testimony amounted to inadmissible testimony. [ECF No. 15, at 48]. Additionally, Respondent asserts that there was no dispute that the victim initially invited Petitioner to her house on the day of the incident. [*Id.*]. The record confirms that the victim initially permitted Petitioner to be on the premises, but the record does not show the victim consented to Petitioner breaking windows.

20

This claim was adjudicated on the merits, and it appears this was the presumptive reasoning of the highest state court. Thus, because Detective Rodriguez's proposed testimony would have had no effect on the outcome, Petitioner cannot meet his burden at showing the highest state court's resolution of the prejudice prong violated § 2254(d).

## IX. Evidentiary Hearing

Pursuant to 28 U.S.C. § 2254(e)(2), federal courts "shall not hold an evidentiary hearing" "unless the application shows" that his claim relies upon "a new rule of constitutional law, made retroactive to cases on collateral review" or "a factual predicate that could not have been previously discovered through the exercise of due diligence[.]" In addition, "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). As Petitioner cannot meet this burden, the Court cannot grant a hearing. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 184-86 (2011) (reasoning a federal evidentiary hearing is barred even if § 2254(d)'s deferential bar does not apply).

## X. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a

certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

"Where a district court has rejected a petitioner's constitutional claims on the merits," "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). If, however, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," COA should not issue unless the prisoner shows "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists would not find the merits or procedural rulings in this Report debatable. The Court should, therefore, not issue a COA.

## XI. Conclusion

Based upon the foregoing it is recommended that:

1.    the federal habeas petition be DENIED [ECF No. 1];

2.    an evidentiary hearing be DENIED;

3.    a certificate of appealability should NOT ISSUE; and,

4.     the case CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen (14) days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida, this 7th day of September, 2020.

UNITED STATES MAGISTRATE JUDGE

**Norris Clemons**
186126
Northwest Florida Reception Center
Inmate Mail/Parcels
4455 Sam Mitchell Drive
Chipley, FL 32428
PRO SE

**Noticing 2254 SAG Broward and North**
Email: CrimAppWPB@MyFloridaLegal.com
*LEAD ATTORNEY*

**Heidi L. Bettendorf**
Attorney General's Office
1515 N Flagler Drive
Suite 900
West Palm Beach, FL 33401-3432
561-837-5000
Fax: 837-5099